

655 Third Avenue
Suite 1821
New York, NY 10017
Tel. No. 212.679.5000
Fax No. 212.679.5005

1010 Northern Boulevard
Suite 328
Great Neck, NY 11021
Tel. No. 516.248.5550
Fax No. 516.248.6027

February 7, 2018

*Via ECF*
The Honorable George B. Daniels
United States District Judge for the
Southern District of New York
500 Pearl Street
New York, New York 10007

   Re: *Camara v. A & P Parking Corp., et al.*
     *Dkt. No. 17-cv-2187-GBD*

Dear Judge Daniels:

   This office serves as counsel to the named Plaintiff, Mory Camara, and the two opt-in Plaintiffs, Patrick Twumasi and Yaw Amponsah, (all three, together where appropriate, as "the Plaintiffs"), in the above-referenced wage-and-hour action brought under, *inter alia*, the Fair Labor Standards Act ("FLSA"), against Defendants, A&P Parking Corp ("A&P"), Muhammad Arif, and Pirzada Uddin (all three, together where appropriate, as "Defendants," and together with Plaintiffs as "the Parties"). We submit this letter, on behalf of the Parties, to respectfully request that the Court review and approve the Parties' settlement of the Plaintiffs' claims brought pursuant to the FLSA as fair and reasonable in accordance with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015).[1] A copy of the Parties' settlement agreement, executed by all of the Parties, is attached hereto as **Exhibit A.**

---

[1] Plaintiffs also bring claims for Defendants' alleged violations of numerous provisions of the New York Labor Law ("NYLL"), the settlement of which does not require court approval. *Simono v. Gemco Realty II, LLC*, Docket No.: 1:16-cv-05385 (AJN), Dkt. No. 32 (S.D.N.Y. Oct. 23, 2017). Therefore, while the attached agreement resolves Plaintiffs' state law wage-related claims, and Defendants' state law counterclaim, Plaintiffs confine their analysis to the fairness of the settlement with respect to their FLSA claims only.

## I.    <u>PRELIMINARY STATEMENT</u>

On March 27, 2017, Mory Camara filed a Complaint in this Court against Defendants - - a corporation that operates several parking garages in the City of New York, as well as its two highest executives and Plaintiff's direct supervisors - - on behalf of himself and all those similarly-situated, asserting claims that Defendants failed to pay him overtime pursuant to the FLSA. *See* Dkt. No. 1. Specifically, Camara alleges that he worked for Defendants as a non-exempt hourly parking attendant at Defendants' numerous parking garages located throughout the five boroughs of New York. For this work, Camara alleges that he routinely worked in excess of forty hours per week, but Defendants failed to pay him at the statutorily-applicable overtime rate of pay for all hours that he worked each week in excess of forty. Instead, Camara claims that Defendants only compensated him with a flat weekly salary, which was intended to cover only the first forty hours that Camara worked each week. Plaintiff Patrick Twumasi opted-into the action on the same day that the Complaint was filed. *See* Dkt. No. 6. On June 9, 2017, Defendants filed their Answer, denying all of Plaintiff's material allegations in the Complaint and bringing a counterclaim against Camara for conversion. *See* Dkt. No. 22. On June 12, 2017, Plaintiff amended his Complaint to include, *inter alia*, a claim for retaliation under the FLSA in response to Defendants' counterclaim. *See* Dkt. No. 24.

Also on June 12, 2017, the Court held a telephone conference and referred this case to mediation with this District's mediation panel. *See* Dkt. No. 23. Prior to mediation, on August 10, 2017, the Court so-Ordered the parties' stipulation to conditional certification to send notice of this action to putative collective members, and notice was subsequently disseminated to twelve people. *See* Dkt. No. 33. During the sixty-day opt-in period, on August 30, 2017, Yaw Amponsah opted-into the action. *See* Dkt. No. 34.

On October 23 and 31, 2017, the parties participated in two mediation sessions with Jennifer Lupo, a member of this District's mediation panel, during which the parties discussed potential liability, as well as the proper method to calculate potential damages with respect to each Plaintiff. During the first mediation, Defendants produced the relevant time and pay records for the three Plaintiffs, as well as Defendants' financial records, which illustrated the very poor financial health of the company. This provided Plaintiffs with an opportunity to better evaluate Plaintiffs' claims with respect to both liability and damages, and at the mediator's suggestion, the Parties agreed to adjourn the mediation so that Plaintiffs could conduct a more thorough analysis of the financial records and determine how they wished to proceed.

At the adjourned mediation date on October 31, 2017, Defendants provided further financial information with respect to the individual defendants, and the Parties again worked with the mediator to find common ground. Although the Parties substantially closed the gap, the mediation was ultimately not successful, but the Parties agreed to continue settlement discussions

and Ms. Lupo stayed involved to help facilitate those discussions.  Eventually, through continued negotiation, and with the assistance of the mediator, the Parties ultimately reached an agreement to resolve all claims asserted in this action.  Based on each Plaintiffs' damages, the parties agreed to settle the matter for a total sum of $90,000.00, which is to be distributed over a nineteen month payment plan, with each Plaintiff receiving, on a pro rata basis with respect to the maximum overall value of their claims, as follows:

| | |
|---|---|
| Mory Camara: | $32,001.13 |
| Patrick Twumasi: | $18,386.89 |
| Yaw Amponsah: | $8,937.42 |

Additionally, Plaintiffs' counsel respectfully submits an application for one-third of the total settlement amount, or $30,000.00, as attorneys' fees, and $674.63 as reimbursement for their out-of-pocket litigation expenses.  The first payment is due no later than thirty days from the date on which the Court approves this settlement, with each successive payment to be paid within thirty days of the preceding payment thereafter.  Each installment is to be split on a pro rate basis between each Plaintiff and counsel.

## II.    THE AGREEMENT IS FAIR AND REASONABLE

Court approval is required to settle and dismiss FLSA claims with prejudice under Federal Rule of Civil Procedure 41. *Cheeks*, 796 F.3d at 206-07.  Courts routinely hold that "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement." *Delgado v. Technical Institute of Am., Inc.*, 2018 WL 637761, at *1 (S.D.N.Y. Jan. 30, 2018) (citation omitted); *accord Chowdhury v. Brioni Am., Inc.*, 2017 WL 5953171, at *2 (S.D.N.Y. Nov. 29, 2017); *Kochilas v. National Merchant Servs., Inc.*, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015).  "Generally, there is a strong presumption in favor of finding a settlement fair, because the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Id*. (citing *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013)).  "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement, and approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *Tiro v. Pub. House Investments, LLC*, 2013 WL 4830949, at *10 (S.D.N.Y. Sept. 10, 2013) (citation and internal quotations omitted).

In evaluating a proposed settlement of FLSA claims, most courts in this Circuit apply the five-factor test articulated in *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).  The *Wolinsky* factors consider: (1) the plaintiffs' range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced

by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *Id.*

   A.  *Range of Possible Recovery*

In this case, Plaintiffs all allege that they worked for Defendants as parking attendants for the following periods of time as is relevant to their FLSA claims, which has a three-year maximum statute of limitations, 29 U.S.C. § 255:

| Plaintiff | Total Claimed Weeks Worked During FLSA Period |
|---|---|
| Camara | 92 weeks |
| Twumasi | 67 weeks |
| Amponsah | 32 weeks |

In his complaint, Plaintiff Camara alleged that he worked seventy-two hours per week from when he commenced his employment with Defendants on March 15, 2015, which subsequently changed to sixty hours per week for approximately one year in November 2015, and then increased to eighty-four hours per week in his last month of employment in February 2017. The opt-in Plaintiffs Twumasi and Amponsah both allege that they worked seventy-two hours per week for the entirety of their employment periods.

During the mediation, Defendants produced time records, which both sides argued benefitted their respective positions. The Parties vehemently disputed the strength of these records in response to Plaintiffs' allegations, and the mediator helped steer the Parties toward the overall goal of reaching a fair and reasonable settlement in light of these legal and factual disputes.

Based on Plaintiffs' allegations and in light of the records, Plaintiffs' maximum potential alleged FLSA recovery, considering both actual and liquidated damages, in comparison to what each is receiving under this settlement (after paying their counsel) is illustrated in the table below as follows:

| Plaintiff | Weeks Worked During FLSA Period | Regular Rate | Alleged Maximum Plus Liquidated FLSA Recovery[2] | Settlement Amount Received After Fees and Costs | Percentage of Alleged Maximum Plus Liquidated FLSA Recovery |
|---|---|---|---|---|---|
| | | | | | |

---

[2] As Defendants maintains that Plaintiffs are not entitled to any damages, they similarly do not agree that each Plaintiff could recover the amount of damages listed herein if this action proceeds to trial.

| Camara | 92 | $11.25 | $78,374.58 | $32,001.13 | 40.8% |
|--------|-----|--------|-----------|-----------|-------|
| Twumasi | 67 | $11.25 | $45,032.14 | $18,386.89 | 40.8% |
| Amponsah | 32 | $11.25 | $21,889.28 | $8,937.42 | 40.8% |

As the mediator stressed, when considering a fair and reasonable settlement, Defendants' financial condition was imperative. As previously explained, Defendants provided full disclosure of their corporate and personal finances, which made clear that early settlement was of the utmost importance in this matter. Defendants unquestionably did not have the ability to withstand a large judgment, and therefore this mediation focused largely around what Defendants actually could pay. Indeed, reaching the right number for recovery was just as difficult as reaching the amount of months Defendants needed to complete payment. Ultimately, Defendants agreed to pay over a longer than usual period of time, but with a default provision that incentivizes them to make all payments in a timely manner. In sum, especially considering that in light of their finances, recovery could just as likely be zero if the Plaintiffs continued litigation, the range of possible recovery strongly favors settlement.

As to the breakdown of the payments between each client, each Plaintiff received a pro rata portion of the entire settlement sum, in proportion to each Plaintiff's actual weeks worked for Defendants. This breakdown was especially fair under the facts of this matter, as all Plaintiffs worked for the same rate of pay and allege that they worked same approximate amount of hours each week.

And as to Camara's FLSA retaliation claim, premised solely on the Defendants' interposition of what Plaintiffs contend is a frivolous counterclaim, because Defendants are agreeing to dismiss that counterclaim as part of this settlement and at such an early stage of the litigation after filing it, and to provide Camara with a general release in his favor, Camara has not suffered any provable damages as a result of the alleged retaliatory conduct under these circumstances. Thus, there is no allocation of any of the settlement sum to that claim.

### B. Avoidance of Burdens and Expenses

Second, settling at this stage obviously allows the parties to avoid substantial costs and delays. Indeed, were a settlement not reached at this stage, the parties would have engaged in additional written and document discovery and depositions of all parties (totaling at least three Plaintiff-depositions and most likely three Defendant-depositions), and potentially subsequent motion practice at the summary judgment stage, and/or a motion for decertification. The parties would then likely proceed to a trial in this matter, followed by post-trial motions and a potential appeal, resulting in a delayed resolution of Plaintiffs' claims at potentially great expense. This settlement eliminates all of those costs and delays. Again, especially in light of Defendants' finances, such an approach laden with uncertain risks and potentially unrecoverable expenses

clearly favors settlement. *See Flores v. Anjost Corp.*, 2014 WL 321831, at *6 (S.D.N.Y. Jan. 29, 2014) (finding that settlement favors approval where defendant disclosed financial information to plaintiff's counsel that demonstrated a substantial risk of collection); *Johnson v. Brennan*, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) (finding that settlement favors approval because it "eliminates the risk of collection" in case where defendants claimed their financial integrity was at risk, and provided corporate and personal financial records at mediation to justify claim).

### C.  Litigation Risks

Third, of course, all parties face the risk of losing at trial, either in whole or in part.  Here, even if Plaintiffs were to succeed on liability, Defendants reasonably could show that they made a good faith effort to comply with the statute, limiting Plaintiffs' recovery to their actual damages only.  Further, if Plaintiffs did not meet their burden of demonstrating that the Defendants willfully violated the law, their FLSA damages would also be limited to only two years from the date that each joined the case instead of three.  Therefore, the settlement amounts here heavily weigh in favor of a fair and reasonable result that warrants this Court's approval.

### D.  Arms-Length Bargaining, No Fraud or Collusion, No Cheeks Admonitions

As detailed herein, the settlement of this case, while achieved before discovery, was an adversarial process that mainly focused on how much Defendants *could* possibly pay in light of the Plaintiffs' alleged damages.  Both sides realized that continued litigation would not be in the best interests of any party involved, and the mediator's work guiding the Parties towards a reasonable result proved extremely beneficial.  Indeed, the fact that the parties' settlement was reached with the guidance of a member of this District's mediation panel strongly indicates a fair and reasonable settlement. *See Siddiky v. Union Square Hospitality Grp. LLC*, 2017 WL 2198158, at *4 (S.D.N.Y. May 17, 2017) (citing *Romero v. La Revise Assocs. L.L.C.*, 58 F. Supp. 3d 411, 420 (S.D.N.Y. 2014)) (applying presumption of procedural fairness where negotiations took place with experienced mediator).  The negotiations were aggressively pursued on both sides, and Ms. Lupo witnessed the adversarial nature of the dispute, working with both sides to come to a fair agreement that all parties ultimately agreed to in compromise as a result of her efforts.  Accordingly, the settlement achieved clearly reflects an arm's-length negotiation absent from fraud or collusion and a reasonable compromise over the contested issues at stake in the matter.

Furthermore, the settlement agreement does not contain any terms that would militate against the Court approving it.  For instance, Plaintiffs' release in their FLSA Settlement Agreement is limited to any FLSA claims that Plaintiffs have or may have against Defendants, and does not fall into the category of releases that are so broad and encompassing as to be rejected because they run afoul of standards of fairness and reasonableness. *See Flood v. Carlson Restaurants Inc.*, 2015 WL 4111668, at *2 (S.D.N.Y. July 6, 2015); *Lopez v. Nights of Cabiria*,

LLC, 2015 WL 1455689, at *6-7 (S.D.N.Y. March 30, 2015).  Likewise, the FLSA agreement does not contain a confidentiality or non-disparagement clause that may "run afoul of the purposes of the FLSA and the public's independent interest in assuring that employees' wages are fair." *Flood*, 2015 WL 4111668, at *1 (citing *Lopez*, 2015 WL 1455689, at *5).

Moreover, the settlement agreement contains a provision that will protect the Plaintiffs in the event that the Defendants default.  Specifically, the settlement agreement contains a provision that should Defendants default on any payment, if Defendants fail to cure in a seven day period, the balance owed to Plaintiffs is then doubled, and Plaintiffs may move the Court to enter a judgment in Plaintiffs' favor for that amount.  To that end, the Parties' proposed order, submitted with the present motion, requests that the Court retain jurisdiction of this matter for the sole purpose of enforcing the terms of the settlement agreement and entering judgment in accordance therewith should it become necessary.

## III.    ATTORNEYS' FEES ARE ALSO REASONABLE

In addition to assessing the reasonableness of the settlement award, most courts since *Cheeks* have found that courts "must also assess the reasonableness of any attorneys' fee award." *Ordonez v. Mio Posto Restaurant, Inc.*, 2014 WL 4075996, at *1 (E.D.N.Y. Aug. 14, 2014) (citing *Wolinsky*, 900 F. Supp. 2d at 336).[3]  Attorneys' fees in FLSA settlements are examined, when examined, "to ensure that the interest of plaintiffs' counsel in counsel's own compensation [did not] adversely affect the extent of the relief counsel [procured] for the clients." *Lliguichuzhca*, 948 F. Supp. 2d at 366 (citing *Wolinsky*, 900 F. Supp. 2d at 336).

Here, Plaintiffs' counsel's request that the Court approve fees of one-third of the total settlement is "consistent with the trend in this Circuit." *Kochilas v. Nat'l Merchant Servs., Inc.*, 2015 WL 5821631, at *8 (E.D.N.Y. Oct. 2, 2015) (collecting cases); *Tiro v. Public House Investments, LLC*, 2013 WL 4830949, at *14 (S.D.N.Y. Sept. 10, 2013) (collecting cases).  Courts

---

[3] Judge Pittman, however, recently found as follows:

> I do not address the fee arrangement between plaintiff and their counsel because I do not believe I am required to do so under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), cert. denied, 136 S. Ct. 824 (2016).  As described in *Cheeks*, the purpose of the FLSA is to regulate the relationship between an employee and her employer and to protect the employee from over-reaching by the employer. 796 F.3d at 206.  I do not understand the FLSA to regulate the relationship between the employee as plaintiff and his counsel or to alter the freedom of contract between a client and his attorney.

*Barbecho v. M.A. Angeliades, Inc.*, 2016 WL 3524066, at *2 n.4 (S.D.N.Y. June 21, 2016).

in this Circuit routinely approve attorney's fees awards at a rate of one-third of the total settlement. *See Flores*, 104 F. Supp. 3d at 306 (noting that the percentage of recovery method is "the trend in this Circuit."); *see also McGreevy v. Life Alert Emergency Response, Inc.*, 258 F. Supp. 3d 380, 384 (S.D.N.Y. 2017); *Najera v. Royal Bedding Co., LLC*, 2015 WL 3540719, at *3 (E.D.N.Y. June 3, 2015) (one-third contingency fees "are commonly accepted in the Second Circuit in FLSA cases") (collecting cases); *Calle v. Elite Specialty Coatings Plus, Inc.*, 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014) (same); *Rangel v. 639 Grand St. Meat & Produce Corp.*, 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013) (observing that in FLSA cases, district courts in the Second Circuit routinely approve fees that amount to one-third of the total recovery). Thus, a one-third recovery is appropriate in a case where, as here, Plaintiff's counsel's fee entitlement is entirely contingent upon success of a settlement or award. *See Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *8 (S.D.N.Y. Nov. 20, 2012) (collecting cases) (one-third recovery is "presumptively reasonable" where "Counsel's fee entitlement is entirely contingent upon success"). Here, Plaintiffs' counsel's requested fee of $30,000.00, or one-third of the settlement, is entirely reasonable and consistent with that law.

Moreover, the reasonableness of these fees is further solidified by applying "the lodestar method as a cross check" to ensure that counsel's fee award is not excessive in relation to the amount of work actually performed. *Pucciarelli v. Lakeview Cars, Inc.*, 2017 WL 2778029, at *1 (E.D.N.Y. June 26, 2017) (citing *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)); *see also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *Goldberger*, 209 F.3d. at 50. When considering the lodestar cross-check, "[c]ourts regularly award lodestar multipliers from 2 to 6 times the lodestar." *Capsolas v. Pasta Resources Inc.*, 2012 WL 4760910, at *9 (S.D.N.Y. Oct. 5, 2012); *see also, e.g.*, *Toure*, 2012 WL 3240461, at *5 (awarding multiplier of 3.53); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 184-186 (W.D.N.Y. 2011) (awarding multiplier of 5.3); *Khait v. Whirlpool Corp.*, 2010 WL 2025106, at *8-10 (E.D.N.Y. Jan. 20, 2010) (awarding multiplier of 3.3); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2001) (calling a multiplier of 4.65 "modest," "fair and reasonable").

In order to conduct the lodestar crosscheck, Plaintiffs' counsel multiplied the attorney and paralegal hours spent on the case by the individuals' reasonable hourly rates. *See Healey v. Leavitt*, 485 F.3d 63, 71 (2d Cir. 2007). Here, if Plaintiffs' counsel were seeking fees pursuant to the lodestar, Michael J. Borrelli, the managing partner, would seek $400 per hour, Alexander T. Coleman, the Firm's litigating partner, would seek $350 per hour for his time, Jeffrey R. Maguire, the Firm's senior associate on the matter would seek $295 per hour, the Firm's junior associates would seek $200 per hour, and the Firm would seek $90.00 per hour on behalf of its paralegals/legal assistants. Courts within this Circuit regularly approve these rates in FLSA cases. *See Davis et al. v. Uptown Communications & Electric, Inc. et al.*, 16-cv-3990-LB, Dkt. No. 105 (E.D.N.Y. Nov. 15, 2017) (approving rates of $400.00 per hour for Michael J. Borrelli, $350.00 per hour for Alexander T. Coleman, $295.00 per hour for Jeffrey R. Maguire, and $90.00 per hour for the Firm's paralegals);*Simono*, Docket No.: 1:16-cv-05385 (AJN), Dkt. No. 32 (approving as

reasonable rates of $400.00 per hour for Mr. Borrelli, $350.00 per hour for Mr. Coleman, $200.00 for the firm's junior associates, and $100.00 per hour for the firm's paralegals); *Amador et al. v. CILS, LTD, et al.*, No. 16-cv-1733 (VB) (S.D.N.Y. Feb. 28, 2017) (approving as reasonable rates of $400 per hour for Mr. Borrelli, $350 for Mr. Coleman, between $200 and $275 for the firm's associates); *Aguilar v. Trolio Landscaping, Inc.*, Docket No.: 16-cv-02230 (CS), D.E. 32 (S.D.N.Y. Feb. 16, 2017) (approving rates of $400.00 per hour for Mr. Borrelli, $350.00 per hour for Mr. Coleman, $200.00 per hour for one of the firm's junior attorneys, and $100.00 per hour for the Firm's paralegals); *Santos v. Yellowstone Properties, Inc.*, 2016 WL 2757427, at *5 (S.D.N.Y. May 10, 2016) (approving rates of $400.00 per hour for Mr. Borrelli, $350.00 per hour for Mr. Coleman after becoming a partner and $325.00 per hour for him prior to becoming a partner, rates ranging from $200.00 to $300.00 for the Firm's associates, and between $75 per hour and $90 per hour for the Firm's paralegals); *Calderon v. Dynamic Corp. Holdings, Inc.*, No 14-cv-3093 (ARL) (E.D.N.Y. Apr. 8, 2016) (same); *Rosario v. Valentine Ave. Discount Store. Co.*, No. 10-cv-5255 (ERK)(LB) (E.D.N.Y. Mar. 3, 2016) (same); *Castillo v. RV Transport, Inc.*, No. 15-cv-527 (LGS)(JCF) (S.D.N.Y. Dec. 21, 2015) (approving rates of $400.00 per hour for Mr. Borrelli, $325.00 per hour for Mr. Coleman prior to him becoming a partner, $250.00 per hour for one of the Firm's senior associates, and $100.00 per hour for the Firm's paralegals).

The Firm calculated its lodestar to be $30,926.50. Thus, the Firm's requested fee of $30,000.00 is almost identical to that figure, and therefore the Firm does not require a multiplier. Plaintiffs' counsel's billing records are annexed hereto as **<u>Exhibit B</u>**.

Lastly, with respect to expenses, the Firm is seeking reimbursement for $674.63 in out-of-pocket expenses, comprised mainly of the filing fee, travel, and postage. Plaintiffs' counsel's expense statement is annexed hereto as **<u>Exhibit C</u>**.

## IV.  <u>CONCLUSION</u>

In light of the foregoing, the parties respectfully request that the Court approve their FLSA settlement and dismiss this matter with prejudice, while retaining jurisdiction for the sole purpose of enforcing the parties' agreement and entering judgment in the event of a breach in accordance with the agreement's terms.  There is a proposed order attached hereto as **<u>Exhibit D</u>** for the Court's convenience.

Respectfully submitted,

_____
Jeffrey R. Maguire, Esq.
*For the Firm*

C:  All Counsel of Record *via* ECF